977 F.2d 593
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff/Appellee/Cross-Appellant,
v.
Ngoan PHAN, Defendant/Appellant/Cross-Appellee.
UNITED STATES of America, Plaintiff/Appellee/Cross-Appellant,
v.
Hong PHAN, Defendant/Appellant/Cross-Appellee.
 Nos. 91-10468, 91-10470, 91-10511 and 91-10512.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 5, 1992.
Decided Oct. 14, 1992.
 
 Before FARRIS, LEAVY and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Ngoan Phan and Hong Phan, husband and wife, appeal their 18-month and 5-month sentences imposed respectively under the federal Sentencing Guidelines following their guilty plea convictions for conspiracy to defraud the government, in violation of 18 U.S.C. § 371 (1988), and unauthorized use of food stamps, in violation of 7 U.S.C. § 2024(b) (1988). The government cross-appeals the sentences. We affirm.
 
 
 3
 * Violation of Plea Agreements
 
 
 4
 Appellants argue the prosecutor violated due process when he failed to follow the terms of the plea agreement by not properly recommending downward departure under § 5K1.1 of the Sentencing Guidelines for the Phan's cooperation with the government in its investigation.
 
 
 5
 The government will be held to the literal terms of the plea agreement. United States v. Travis, 735 F.2d 1129, 1132 (9th Cir.1984). Where the government violates a plea agreement at sentencing, the usual remedy is a remand for resentencing. Id.
 
 
 6
 The plea agreements made by both defendants provide:
 
 
 7
 In return for your client's plea and her [his] agreement to cooperate, the government agrees to recommend a sentence within the applicable guideline range and will consider making a motion for downward departure pursuant to Section 5K of the Sentencing Guidelines. The decision to file such a motion and the extent of the downward departure recommended, if any, will depend on the nature, value and extent of the cooperation which your client provides.
 
 
 8
 (emphasis supplied). Under the 'literal terms' of the agreements, then, the government was not required to make a motion for downward departure.
 
 
 9
 The record shows, however, the government made such a motion and argued against any downward departure because it found the information provided by the Phans to be "not useful." The record also shows the Phans each received a two-level downward departure "upon motion of the government, as a result of defendant's substantial assistance."
 
 
 10
 In fact, the government did comply with the terms of the plea agreements, and the Phans received a downward departure despite the arguments of the government. The Phans' claim of a due process violation is meritless.
 
 II
 Error in Setting Offense Level
 
 11
 Appellants argue the district court erred in finding the amount of loss in this action to be more than $800,000, resulting in an offense level of 17 under § 2F1.1 of the Sentencing Guidelines. In particular, appellants contend the $40,000 worth of unredeemed food stamps found in both the Phans' place of employment in Sacramento and their co-conspirators' home in Houston should not be included in the amount of loss determination, reducing the total loss to less than $800,000 and warranting a reduction in the offense level to 16.
 
 
 12
 The district court "need only make a reasonable estimate of the range of loss, given the available information." United States Sentencing Commission, Guidelines Manual, § 2F1.1, comment. (n. 8) (Nov.1989) (U.S.S.G.); see also United States v. Davis, 922 F.2d 1385, 1392 (9th Cir.1991). "[I]f a probable or intended loss that the defendant was attempting to inflict can be determined, that figure would be used if it was larger than the actual loss." Id., comment 7; see also United States v. Fine, No. 90-50280, at 11074 (9th Cir. Sept. 14, 1992) (en banc).
 
 
 13
 Here, there is evidence which supports a total loss of over $1,000,000. Furthermore, the record shows the claimed $40,000 reduction in total loss represents unredeemed food stamps found both in the private home of the co-conspirators in Houston ($27,467), and at one of the Phans' places of employment in Sacramento, New Pacific Seafood ($12,190). Given the facts that the Houston co-conspirators could not redeem food stamps themselves, and New Pacific Seafood had legitimate food stamp sales of only $5,000 annually in prior years, this evidence supports the conclusion that these food stamps were intended to be used in the same conspiracy to defraud the government. In light of the record, the finding of the district court of a loss greater than $800,000 was not clearly erroneous.
 
 III
 
 14
 Enhancement for "More than Minimal Planning"
 
 
 15
 Appellants argue the district court erred in finding the offense involved "more than minimal planning" which warranted a two-level increase in sentencing in both cases.
 
 
 16
 The Sentencing Guidelines call for a two-level increase "[i]f the offense involved (A) more than minimal planning...." U.S.S.G. § 2F1.1(b)(2). "More than minimal planning" is defined as "more than is typical for commission of the offense in a simple form," U.S.S.G. § 1B1.1, comment. (n. 1(f)), and "is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune." Id.
 
 
 17
 The record shows the Phans received their shipments from the Houston co-conspirators at three different airports, via several different airline couriers, and took several counter-surveillance measures to avoid detection of the conspiracy by the government. The Phans' active participation in the conspiracy exceeded "commission of the offense in a simple form." Furthermore, 71 instances of receiving, processing, depositing, and returning cash for food stamps can by no means be described as "purely opportune." The district court did not err in enhancing both sentences by two levels for offenses involving "more than minimal planning."
 
 IV
 Ngoan Phan's Supervisory Role Enhancement
 
 18
 On cross-appeal, the government contends the district court clearly erred when it failed to enhance Ngoan Phan's sentence by three levels for his aggravating role in the conspiracy.
 
 
 19
 U.S.S.G. § 3B1.1(b) provides: "If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels." "[T]he purpose of Part B is to enable the sentencing court to take account of defendant's relative responsibility within a criminal enterprise." United States v. Helmy, 951 F.2d 988, 997 (9th Cir.1991), cert. denied, 112 S.Ct. 2287 (1992). "[A] role adjustment is warranted only if [Ngoan] exercised 'some degree of control or organizational authority over others.' " United States v. Koenig, 952 F.2d 267, 274 (9th Cir.1991) (quoting United States v. Mares-Molina, 913 F.2d 770, 773 (9th Cir.1990)).
 
 
 20
 There is evidence in the record which could support a finding that Ngoan was a "manager or supervisor" in this conspiracy. The district court, however, found the evidence insufficient to warrant the three-level enhancement sought by the government. "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Service Employees Int'l Union v. Fair Political Practices, 955 F.2d 1312, 1317 n. 7 (9th Cir.) (quoting Anderson v. Bessemer City, 470 U.S. 564, 573-74 (1985)), cert. denied, 112 S.Ct. 3056 (1992). In light of other evidence which supports the district court's finding that Ngoan was not a "manager or supervisor," we are unable to conclude the district court clearly erred in its finding.
 
 V
 
 21
 Hong Phan's Reduction for a Mitigating Role
 
 
 22
 The government also cross-appeals the district court's "three level downward departure [applied] to Hong Phan based on the 'peculiar relationship of husband and wife in Vietnam.' " The government argues such a "downward departure" is prohibited by U.S.S.G. § 5H1.10 which underscores Congressional intent to eliminate national origin as a relevant factor in the determination of a sentence.
 
 
 23
 The government's argument could have merit if the district court actually granted a downward departure in this case. However, a review of the record leads this court to understand the district court's action as not a 'downward departure,' but a 'reduction' in the offense level for Hong's mitigating role in the offense under U.S.S.G. § 3B1.2. Although inartfully worded, the language of the district court in pronouncing sentence both refers to the three-level decrease as a "reduction" and follows in the record a discussion on Hong's role in the conspiracy and a conversation with the probation officer concerning the court's options under § 3B1.2. Further, the reduction is mentioned in the court's pronouncement after the finding of basic offense level and prior to the granting of a two-level departure for cooperation with the authorities under § 5K1.1, the proper location for a consideration of reduction under § 3B1.2. See U.S.S.G. § 1B1.1 for Application Instructions.
 
 
 24
 Under U.S.S.G. § 3B1.2, the court decreases the defendant's offense level by four levels if the defendant "was a minimal participant," or by two levels if the defendant "was a minor participant." In cases where the court finds the defendant's culpability falls somewhere in between 'minor' and 'minimal,' it may decrease the offense level by three levels. The proper analysis for the district court under § 3B1.2, then, "involves a determination that is heavily dependent upon the facts of the particular case." U.S.S.G. § 3B1.2 Background comment. The district court examines the facts to determine relative culpability of the defendants. Id. comment. (n. 1, 3).
 
 
 25
 Here, the court found Hong's role in the conspiracy fell somewhere between 'minimal' and 'minor,' apparently because Hong's culpability was less than that of Ngoan's due to her cultural proclivity to follow his orders without question. The court further found Hong's activities did not warrant a four-level reduction because her initial proclivity to follow her husband's orders did not excuse her repeated participation in the illegal cashing of the food stamps. In light of evidence in the record supporting the finding by the district court that Hong was less culpable than the other conspirators, we cannot say the court clearly erred in making the reduction. We are reminded, however, that careful usage of Guidelines terminology, in this case 'reduction' and 'departure,' may eliminate this type of appeal in the future.
 
 
 26
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3